UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN MCCULLOCH,

                              Plaintiff,

              - against -

BOARD OF TRUSTEES OF THE SEIU
AFFILIATES OFFICERS AND
EMPLOYEES PENSION PLAN, and THE
SEIU AFFILIATES OFFICERS AND
EMPLOYEES PENSION PLAN,

                              Defendants.

**ORDER**

17 Civ. 3927 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Kevin McCulloch brings this action against the Board of Trustees of the SEIU
Affiliates Officers and Employees Pension Plan and The SEIU Affiliates Officers and
Employees Pension Plan, alleging that Defendants amended the Plan to remove certain benefits,
and did so in violation of the "anti-cutback" provision of the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

        The parties have cross-moved for summary judgment.  For the reasons stated
below, Defendants' motion for summary judgment will be granted and Plaintiff's motion for
summary judgment will be denied.

## BACKGROUND[1]

### I.     THE PARTIES

Between 1967 and 1999, Plaintiff Kevin McCulloch was employed by Local 32BJ of the Service Employees International Union ("Local 32BJ") in New York.  (Pltf. R. 56.1 Stmt. (Dkt. No. 52-2) ¶ 1)[2]

Defendant SEIU Affiliates Officers and Employees Pension Plan (the "Plan") is an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, and is also a "defined benefit plan" within the meaning of Section 3(35) of ERISA.  (Id. ¶¶ 3-4)

Defendant Board of Trustees of the SEIU Affiliates Officers and Employees Pension Plan (the "Trustees") is the "plan administrator" within the meaning of Section 3(21) of ERISA.  (Id. ¶ 5)

Plaintiff is a "participant" in the Plan (id. ¶ 6), and was also a participant in a pension benefit plan provided directly by Local 32BJ (the "Local 32BJ Pension Plan").  (Id. ¶¶ 12-13)  Plaintiff retired from Local 32BJ on October 1, 1999.  (Id. ¶ 1)  He applied for pension benefits from the Plan, and on November 1, 1999, his application was approved.  (Id. ¶ 8)  Plaintiff did not elect to receive benefits under the Local 32BJ Pension Plan at that time. (Id. ¶ 14)

---

[1] To the extent that this Court relies on facts drawn from a party's Local Rule 56.1 statement, it has done so because the opposing party has either not disputed those facts or has not done so with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).  Where a non-moving party disputes a moving party's characterization of cited evidence, and has presented an evidentiary basis for doing so, the Court relies on the non-movant's characterization of the evidence.  See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion). Unless otherwise indicated, the facts cited by the Court are undisputed.
[2] Unless otherwise indicated, cites are to the docket in 17 Civ. 3927 (PGG).

## II.    THE CONVERSION TO A MULTI-EMPLOYER PLAN AND THE INTERNAL REVENUE CODE'S NON-AGGREGATION RULE

In 1999, when Plaintiff began receiving pension benefits from the Plan, the Plan was a "single-employer plan" within the meaning of Section 3(41) of ERISA.  (Def. R. 56.1 Stmt. (Dkt. No. 58) ¶ 21)  On August 17, 2007, however, the Plan submitted an application to convert from single employer plan status to multi-employer plan status as defined under ERISA Section 3(37)(G), 29 U.S.C. § 1002(37)(G).  (Id. ¶ 22)  On February 26, 2008, the Pension Benefit Guaranty Corporation granted that request, and multi-employer plan status was made retroactively effective to January 1, 2006.  (Id. ¶ 23)

Prior to the Trustees' decision to convert to multi-employer plan status, Plan benefits were subject to limits under Section 415 of the Internal Revenue Code.  Section 9.12 of the Plan[3] provides for certain "Maximum Benefit Limitations," including that

> [i]f a Participant also participates in another defined benefit plan of a Participating Organization, such Plan will be combined with this Plan in accordance with Section 415(f) of the Internal Revenue Code for purposes of determining compliance with the limitations under Section 415(b) of the Internal Revenue Code.

(Def. R. 56.1 App'x ("2001 Plan") (Dkt. No. 58-1) at 91, § 9.12(m))[4]

Section 9.12 of the Plan was amended on December 29, 2008, when the Trustees approved Amendment 12 to the Plan.  Amendment 12 adds subsection (p) to the "Maximum Benefit Limitation" provision.  Subsection (p) provides:

> Notwithstanding anything in the Plan to the contrary, for purposes of this Section 9.12, the Plan shall continue to apply the provisions of the Code Section 415 that apply to a single employer plan (as defined in ERISA Section 3(41)), rather than to a multiemployer plan (as defined in Code Section 414(f)).

---

[3]  In the 1999 Plan, this provision appears as Section 9.11(m).  (Def. R. 56.1 App'x (1999 Plan) (Dkt. No. 58-1) at 179, § 9.11(m))

[4]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files system.

(Pltf. R. 56.1 App'x, Ex. C (Amendment #12) (Dkt. No. 52-6) § 9.12(p))  Amendment 12

provides for an effective date of January 1, 2008.  (Pltf. R. 56.1 Stmt. (Dkt. No. 52-2) ¶ 10)

Section 415 of the Internal Revenue Code is entitled "[l]imitations on benefits and

contributions under qualified plans."  26 U.S.C. § 415.  Section 415(b)(1) limits the pension

benefits that an employee may receive each year to the lesser of a set dollar amount[5] or 100% of

the average compensation for the participant's three highest-earning years.  Id. § 415(b)(1).

Multi-employer plans are exempt from the average annual compensation limit, but are subject to

the set dollar amount limit.  Id. § 415(b)(11) ("In the case of a . . . multiemployer plan . . . ,

subparagraph (B) of paragraph (1) shall not apply.").

Pursuant to Section 415(f)(1)(A) of the Internal Revenue Code, "all defined

benefit plans (whether or not terminated) of an employer are to be treated as one defined benefit

plan."  In other words, participants may not circumvent the Section 415(b) limitations by

receiving pension benefits from multiple plans.  Id. § 415(f)(1)(A).  Under Section 415(f)(2),

however, the aggregation requirement does not apply to multi-employer plans:

> Notwithstanding [Section 415(f)(1)(A)], a multiemployer plan . . . shall not be
> combined or aggregated –
>
> (A)     with any other plan which is not a multiemployer plan for
> purposes of applying [the highest average annual compensation
> limit] to such other plan, or
>
> (B)     with any other multiemployer plan for purposes of applying
> the limitations established in this section.

---

[5]  Section 415(b) sets the capped amount at $160,000 per year, subject to an annual cost-of-living
adjustment under Section 415(d).

Id. § 415(f)(2).  Accordingly, the Internal Revenue Code does not require multi-employer plans to aggregate participants' pension benefits from all sources to ensure that the participant's benefits do not exceed the benefit limit.

### III.   THE SEPTEMBER 9, 2014 REDUCTION IN BENEFITS LETTER AND THE PRIOR LITIGATION

In May 2014, Plaintiff began receiving benefits from the Local 32BJ Pension Plan.  (Pltf. R. 56.1 Stmt. (Dkt. No. 52-2) ¶ 14)  Plaintiff notified the Plan of this development. (Id. ¶ 15)  In a September 9, 2014 letter (the "Reduction in Benefits Letter"), the Plan informed Plaintiff that – because he had begun receiving pension benefits from the Local 32BJ Pension Plan – and "[i]n compliance with the maximum benefit limitations under Internal Revenue Code (IRC) Section 415, effective **May 1, 2014**, your 50% Husband and Wife benefit from the . . . Plan has been reduced from $10,075.00 to **_$9,007.00_** per month."  (Pltf. R. 56.1 App'x (Sept. 9, 2014 Letter) (Dkt. No. 52-7) at 2 (emphasis in original))

On November 14, 2014, McCulloch filed a Complaint in this District against Defendants, and the case was assigned to this Court.  (See McCulloch v. Bd. of Trustees of the SEIU Affiliates Officers and Employees Pension Plan et al., 14 Civ. 9348 (PGG) (the "2014 Case"))  The Complaint in the 2014 Case asserts that Amendment 12 to the Plan – which adds subsection (p) to Section 9.12 – constitutes a reduction in Plaintiff's accrued benefits in violation of Section 204(g) of ERISA.  (Id. Cmplt. (Dkt. No. 1) ¶¶ 36-44)  On March 31, 2016, this Court granted Defendants' motion for summary judgment, finding that Plaintiff had not exhausted his administrative remedies.  (14 Civ. 9348 (Mar. 31, 2016 Order) (Dkt. No. 46) at 11-14)[6]

Because Plaintiff had not exhausted his administrative remedies, the Court did not address the merits of Plaintiff's claim that the Trustees had improperly aggregated his benefits.

---

[6]  Familiarity with the March 31, 2016 Order is assumed.

The Court nonetheless expressed concern about any interpretation of the Plan that imposed an aggregation requirement, given that the Internal Revenue Code exempts multi-employer plans from the aggregation requirement:

> Given that Plaintiff must exhaust his administrative remedies, this Court does not reach the issue of whether Section 9.12(m) retained the Section 415(f)(1) aggregation requirement when the Plan became a multiemployer plan.  The Court notes, however, that Section 9.12(m) incorporates IRC Section 415(f) by reference.  Indeed, Section 9.12(m) provides that benefits are to be aggregated "in accordance with Section 415(f)."  Section 415(f)(2) unambiguously exempts multiemployer plan benefits from the aggregation requirement where the beneficiary receives benefits from another multiemployer plan.  Both the Plan and the Local 32BJ Fund are multiemployer plans.  (Pltf. Resp. to Def. R. 56.1 Stmt. (Dkt. No. 34-2) at ¶¶ 9, 23)  Accordingly, aggregation "in accordance with Section 415(f)" would appear to require – as to Plaintiff – no aggregation of benefits at all.  To interpret Section 9.12(m) in a way that maintains the aggregation rule when the Plan became a multiemployer plan does not account for Section 9.12(m)'s reference to Section 415(f).  The Trustees "cannot simply ignore the language [they] chose" in favor of a rule that they determine to be preferable.  Arquilla-Romeo v. Metropolitan Life Ins. Co., 980 F. Supp. 2d 847, 852 (N.D. Ohio 2013) (finding defendant plan's interpretation arbitrary and capricious where it argued that the word "and" should be interpreted as "or").  The Trustees' interpretation must be a reasonable reading of the text of Section 9.12(m), and must account for that section's reference to Section 415(f).

(14 Civ. 9348 (Mar. 31, 2016 Order) (Dkt. No. 46) at 14 n.8)

Plaintiff appealed this Court's March 31, 2016 order granting the Defendants summary judgment on exhaustion grounds.  In an April 10, 2017 summary order, the Second Circuit affirmed.  McCulloch v. Bd. of Trustees of SEIU Affiliates Officers & Emps. Pension Plan, 686 F. App'x 68 (2d Cir. 2017).

## IV.   PLAINTIFF'S ADMINISTRATIVE APPEAL AND THE TRUSTEES' DECISION DENYING THE APPEAL AS UNTIMELY

On May 26, 2016, Plaintiff filed an administrative appeal concerning the reduction in his pension benefits pursuant to Amendment 12.  (Def. R. 56.1 Stmt. (Dkt. No. 58) ¶ 78)  In a July 28, 2016 decision, the Trustees denied Plaintiff's appeal as "untimely."  (Id. ¶ 79).

The substantive portion of the Trustees' decision reads as follows:

In evaluating the timeliness of Mr. McCulloch's appeal, the Trustees considered the relevant Plan language:

> The Board of Trustees shall adopt a Claims and Review Procedure which shall specify the manner and form in which applications for benefits under this Article IX shall be submitted and acted upon and which shall establish a procedure for reviewing claims for benefits which have been denied either in whole or in part. Any such procedure shall be subject to amendment from time to time by the Trustees subject only to the requirement that it conform with the applicable provisions of [ERISA] and regulations promulgated thereunder.

Plan Section 9.04. Pursuant to this authority, the Trustees have adopted the following procedure:

> If you receive such a notice or if you disagree with a policy, determination or action of the Fund, you may request the Board of Trustees to review your benefit denial or the Fund policy, determination or actions with which you disagree. Your written appeal should state the reasons for your appeal and shall be filed within 90 days after receipt of the notice.

Summary Plan Description, p.57

The district court determined that Mr. McCulloch received the denial of his claim on September 9, 2014. His appeal, however, was not submitted to the Fund until May 26, 2016. Thus, Mr. McCulloch's appeal was filed more than a year-and-a-half following the Fund's notice of the denial of his benefit, well after the 90-day deadline. Because the appeal was received outside the limitations period established in the Fund's procedures it is denied as untimely.

The Trustees did, however, consider your arguments as to why they should nevertheless consider the merits of Mr. McCulloch's appeal. First, you state that the Fund's December 29, 2008, letter advising Mr. McCulloch of the Trustees' determination to continue to apply the single employer plan aggregation rules did not adequately notify Mr. McCulloch of his obligation to appeal. The Trustees rejected this argument for several reasons. First, as stated above, the district court concluded that the September 9, 2014 letter was the actual notice of denial. Second, Mr. McCulloch had actual knowledge of his obligation to appeal since the complaint filed on his behalf – which was filed within the 90-day period for filing an administrative appeal – specifically asserted that such an appeal was unnecessary because the issues in dispute were of law and exhaustion would be futile. Finally, although failure to give adequate notice of a claimant's rights may

7

in some instances provide a basis to forgive the failure to exhaust administrative remedies, the Trustees noted that the district court dismissed Mr. McCulloch's law suit specifically because he had failed to exhaust his administrative remedies. For each of these reasons, the Trustees concluded that there was no basis to waive Mr. McCulloch's failure to file a timely appeal.

You also argue that the district court's decision effectively orders the Trustees to consider Mr. McCulloch's appeal, even if it is untimely.  The Trustees, however, reviewed the operative language of the district court's order granting the Fund's motion for summary judgment and do not agree that it includes such a mandate. Although the language you quote from the court's decision explains the basis and rationale for the general rule that participants must exhaust their administrative remedies before recourse to the courts, it does not form any part of the court's order.

Notwithstanding having denied your appeal as untimely, the Trustees nevertheless believed it would be helpful to provide further explanation of the basis for the Fund's decision to continue to aggregate Mr. McCulloch's benefit with his benefit from the 32BJ Plan.  At their February 8, 2008 meeting, the Trustees interpreted the Plan language to require aggregation of benefits, notwithstanding the Fund's conversion to multiemployer status.  In reviewing your appeal, the Trustees reviewed the operative Plan language, along with your arguments and the statement from the district court quoted in your appeal.  That relevant Plan language, which was in effect prior to the December 29, 2008 Plan amendment, states as follows:

> (m) If a Participant also participates in another defined benefit plan of a Participating Organization, such Plan will be combined with this Plan in accordance with Section 415(f) of the Internal Revenue Code for purposes of determining compliance with the limitations under Section 415(b) of the Internal Revenue Code.

Plan Section 9.12(m), 2001 Restatement.  The Trustees discussed your argument that the reference to Section 415(f) also incorporated the statutory language providing that multiemployer plans are not required to aggregate benefits with single employer plans.  Ultimately, however, the Trustees rejected this argument. They noted that the Plan language states that benefits "will be combined . . . ," which the Trustees determined was mandatory language requiring aggregation. They construed the reference to Section 415(f) as providing a methodology for such aggregation, rather than incorporating its exclusions.  They further noted that, at the time this Plan language was originally adopted, Section 415(f) did not contain an exemption from the aggregation requirement for multiemployer plans. That statutory exemption was enacted into law as part of the Economic Growth Tax Relief Reconciliation Act of 2001.  Based upon the Plan language and its history, the Trustees determined that the intent of the Plan language was to require aggregation of benefits even if such aggregation was no longer legally required.

The underlying foundation of Mr. McCulloch's appeal is that the December 29, 2008 Plan amendment retroactively reduced Mr. McCulloch's benefit by adopting the single employer aggregation rules to replace the multiemployer plan rules that had become applicable upon the Fund's conversion to multiemployer status.  As explained above, however, the Trustees determined that the multiemployer plan aggregation rules never became effective for the Fund under the language of the Plan in effect at the time.  Consequently, the December 2008 Plan amendment did not reduce Mr. McCulloch's accrued benefit.

As stated above, the Trustees denied Mr. McCulloch's appeal as untimely.  This determination is final and binding on all persons.  Nevertheless, even if your appeal had been timely, it would have nevertheless been denied for the reasons stated herein.

(Def. R. 56.1 App'x (Dkt. No. 58-1) (July 28, 2016 Admin. App. Decision) at 203-05)

## V.   PROCEDURAL HISTORY

The Complaint in the instant action was filed on May 24, 2017.  (Cmplt. (Dkt. No. 1))  Plaintiff again claims that Amendment 12 "unlawfully and retroactively reduced the benefits already accrued by participants and their beneficiaries" (id. ¶ 56) in violation of Section 204(g) of ERISA, which states that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."  29 U.S.C. § 1054(g)(1); see also Cmplt. (Dkt. No. 1) ¶ 52.  Plaintiff also claims that "Defendants, by improperly aggregating McCulloch's benefits under the Plan with his benefits under the Local 32BJ Plan contrary to Section 9.12(m) of the Plan, reduced the full amount of benefits to which McCulloch is entitled" (Cmplt. (Dkt. No. 1) ¶ 64), in violation of Section 502(a)(1)(B) of ERISA, which provides for a right of action "to recover benefits due . . . under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); see also Cmplt. (Dkt. No. 1) ¶¶ 62-65.  Plaintiff seeks the amount of pension benefits he would be entitled to absent aggregation under Section 415, as well as costs and attorneys' fees.  (Cmplt. (Dkt. No. 1) at 11)

On February 2, 2018, Defendants moved to dismiss, arguing that Plaintiff's claim is barred by res judicata, a failure to exhaust administrative remedies, and untimeliness.  (Def. MTD Br. (Dkt. No. 19) at 9-13)  This Court denied the motion to dismiss on September 29, 2018.  (Sept. 29, 2018 Order (Dkt. No. 26) at 16-24)

On October 19, 2018, Defendants moved for reconsideration.  (Dkt. No. 36)  On September 30, 2019, this Court denied Defendants' motion for reconsideration, and their request for an order certifying interlocutory appeal.  (Sept. 30, 2019 Order (Dkt. No. 50) at 13)

The parties have cross-moved for summary judgment.  (Pltf. Mot. (Dkt. No. 52); Def. Mot. (Dkt. No. 55))

## DISCUSSION

## I.    LEGAL STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.1(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56.1 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'"  Lesavoy v. Lane, No. 02 Civ. 10162, 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting

Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)).  However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'"  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456.1 (2d Cir. 1995)).  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  Eviner v. Eng, No. 13 Civ. 6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)).

"The same standard[s] appl[y] where, as here, the parties file[] cross-motions for summary judgment. . . ."  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.  Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  Id. (internal citation omitted).

## II.   ANALYSIS

Considered on the merits,[7] the parties' cross-motions require this Court to determine whether (1) the Trustees reasonably concluded that Section 9.12(m) of the 2001 Plan – which was in effect when the Plan became a multi-employer plan in February 2008 – requires

---

[7]  Defendants' argument that Plaintiff's claim is untimely is rejected for the same reasons explained in this Court's September 29, 2018 Order denying Defendants' motion to dismiss (Dkt. No. 26), and September 30, 2019 Order denying Defendants' motion for reconsideration. (Dkt. No. 50)

aggregation of Plaintiff's benefits; and (2) Plaintiff accrued as a benefit – for purposes of

ERISA's anti-cutback provision – a right not to have his benefits under the two plans aggregated.

### A.   Whether the Trustees' Interpretation of Section 9.12(m) Is Reasonable

Plaintiff does not dispute that, as plan administrator, the Board of Trustees has

discretionary authority to construe terms of the Plan.  (Def. R. 56.1 Stmt. (Dkt. No. 58) ¶ 48)

In such circumstances, a plan administrator's interpretation is entitled to deference.

> "We review a plan administrator's decision de novo unless the plan vests the
> administrator with 'discretionary authority to determine eligibility for benefits or
> to construe the terms of the plan,' in which case we use an 'abuse of discretion'
> standard."  Nichols, 406 F.3d at 108 (quoting Firestone, 489 U.S. at 115, 109
> S.Ct. 948).  Under this Firestone deference, "[a] court may overturn a plan
> administrator's decision to deny benefits only if the decision was without reason,
> unsupported by substantial evidence or erroneous as a matter of law."  Celardo,
> 318 F.3d at 146 (internal quotation marks omitted).  "However, where the trustees
> of a plan impose a standard not required by the plan's provisions, or interpret the
> plan in a manner inconsistent with its plain words, or by their interpretation render
> some provisions of the plan superfluous, their actions may well be found to be
> arbitrary and capricious."  O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55
> F.3d 109, 112 (2d Cir.1995) (internal quotation marks and alteration omitted).

Frommert v. Conkright, 738 F.3d 522, 529 (2d Cir. 2013)

In their July 28, 2016 decision rejecting Plaintiff's administrative appeal, the

Trustees explain as follows their "decision to continue to aggregate Mr. McCulloch's benefit

with his benefit under the 32BJ plan":

> At their February 8, 2008 meeting, the Trustees interpreted the Plan language to
> require aggregation of benefits, notwithstanding the Fund's conversion to
> multiemployer status.  In reviewing your appeal, the Trustees reviewed the
> operative Plan language, along with your arguments and the statement from the
> district court quoted in your appeal.  That relevant Plan language, which was in
> effect prior to the December 29, 2008 Plan amendment, states as follows:
>
>> (m) If a Participant also participates in another defined benefit plan
>> of a Participating Organization, such Plan will be combined with
>> this Plan in accordance with Section 415(f) of the Internal Revenue
>> Code for purposes of determining compliance with the limitations
>> under Section 415(b) of the Internal Revenue Code.

Plan Section 9.12(m), 2001 Restatement.  The Trustees discussed your argument that the reference to Section 415(f) also incorporated the statutory language providing that multiemployer plans are not required to aggregate benefits with single employer plans. Ultimately, however, the Trustees rejected this argument.  They noted that the Plan language states that benefits "will be combined . . . ," which the Trustees determined was mandatory language requiring aggregation.  They construed the reference to Section 415(f) as providing a methodology for such aggregation, rather than incorporating its exclusions.  They further noted that, at the time this Plan language was originally adopted, Section 415(f) did not contain an exemption from the aggregation requirement for multiemployer plans.  That statutory exemption was enacted into law as part of the Economic Growth Tax Relief Reconciliation Act of 2001.  Based upon the Plan language and its history, the Trustees determined that the intent of the Plan language was to require aggregation of benefits even if such aggregation was no longer legally required.

(Def. R. 56.1 App'x (Dkt. No. 58-1) (July 28, 2016 Admin. App. Decision) at 204-05)

When considered in context, it is clear that the Trustees – in adopting the language set forth in Section 9.12(m) in the 1999 Plan – intended to require aggregation of benefits.

As discussed above, Section 9.12(m) was adopted as part of the 1999 Plan.[8]  The 1999 Plan was in effect when Plaintiff retired.  (Def. R. 56.1 Stmt. (Dkt. No. 58) ¶ 27)  At that time – as the Trustees correctly assert in their July 28, 2016 decision – Section 415(f) of the Internal Revenue Code contained no exemption from aggregation for multiemployer plans.  26 U.S.C. § 415(f) (1999).

Accordingly, in stating that "[i]f a Participant also participates in another defined benefit plan of a Participating Organization, such Plan will be combined with this Plan in accordance with Section 415(f) of the Internal Revenue Code for purposes of determining compliance with the limitations under Section 415(b) of the Internal Revenue Code," the Trustees were enacting a provision that requires aggregation of benefits.

---

[8]  As noted above, this provision appears as Section 9.11(m) in the 1999 Plan.  (Def. R. 56.1 App'x (1999 Plan) (Dkt. No. 58-1) at 179, § 9.11(m))

The Trustees also point out that the language "will be combined" is mandatory in nature.

Given (1) that Section 415(f) of the Internal Revenue Code contained no exemption from aggregation for multiemployer plans as of the time that the 1999 Plan was adopted; and (2) the explicit direction that benefits "will be combined," the Trustees' conclusion that Section 9.12(m) requires aggregation is a reasonable interpretation of the Plan language. Indeed, it is the most persuasive interpretation of the Plan's language. Moreover – since 1999 – the Trustees have consistently interpreted the Plan as requiring aggregation.

The Internal Revenue Code's exception for multiemployer plans did not become effective until 2002. 26 U.S.C. § 415(f)(3) (2002). As of 2002, the Plan was still a single employer plan, and the Summary Plan Description for the 2001 Plan states that Section 415 [of the Internal Revenue Code] applies "to the combined total of all benefit pension plans sponsored by your employers," (Def. R. 56.1 Stmt. (Dkt. No. 58) ¶ 59 (quoting Def. R. 56.1 App'x (May 7, 2015 Abrecht Decl.) (Dkt. No. 58-1) at 122, ¶ 19 (quoting 2001 Summary Plan Description)) (emphasis added in Abrecht Decl.))

As discussed above, on February 26, 2008, the Pension Benefit Guaranty Corporation granted the Plan's request for multi-employer plan status. (Id. ¶ 23) And on December 29, 2008, the Trustees approved Amendment 12 to the Plan, which makes clear that the aggregation rule continuously in effect since 1999 will remain in effect, despite the change to multi-employer plan status: "the Plan shall continue to apply the provisions of the [Internal Revenue] Code Section 415 that apply to a single employer plan (as defined in ERISA Section 3(41)), rather than to a multiemployer plan (as defined in Code Section 414(f))." (Pltf. R. 56.1 App'x, Ex. C (Amendment 12) (Dkt. No. 52-6) § 9.12(p)) Amendment 12 merely continues the

Trustees' consistent policy of enforcing aggregation of benefits from plans sponsored by a Participating Organization.

Plaintiff's claim that the Trustees have adopted an unreasonable interpretation of the Plan is not persuasive.  Plaintiff argues, for example, that "[t]he Internal Revenue Code clearly and explicitly provides that, upon conversion to a multi-employer plan, benefits under the Plan 'shall not be combined or aggregated . . . with any other multiemployer plan' for purposes of Section 415," and "the Board [is] not free to read the Plan in ways that ignore statutory rights created by ERISA and the Internal Revenue Code."  (Pltf. Br. (Dkt. No. 52-1) at 16)

Contrary to Plaintiff's arguments, however, Section 415 of the Internal Revenue Code does not create "the rights at issue in this case."  (Id.)  As this Court noted in its March 31, 2016 Order – Section 415 "is not part of ERISA.  It is, instead, a tax provision that addresses pension plans."  (14 Civ. 9348 (Mar. 31, 2016 Order) (Dkt. No. 46) at 13)

Section 415(f) provides that, "[f]or purposes of applying the limitations of subsection[] (b) . . . all defined benefit plans . . . are to be treated as one defined benefit plan." 26 U.S.C. § 415(f)(1).  However, "a multiemployer plan . . . shall not be combined or aggregated . . . with any other plan which is not a multiemployer plan . . . for purposes of applying the limitations established in this section."  Id. § 415(f)(2).  Section 415(b), in turn, limits the extent to which benefits from defined benefit plans are accorded preferential tax treatment:  "Benefits with respect to a participant exceed the limitation of this subsection if, when expressed as an annual benefit . . . , such annual benefit is greater than the lesser of . . . $160,000, or . . . 100 percent of the participant's average compensation for his high 3 years."  Id. § 415(b)(1).[9]

---

[9]  Section 415(b) provides special rules for certain participants, but the parties have not invoked these provisions in their briefs.

In sum, Section 415 limits the extent to which benefits obtained from defined benefit plans may be accorded preferential tax treatment.  While Section 415(f) bars the "combin[ing] or aggregat[ing]" of benefits obtained from multiemployer plans for purposes of the Internal Revenue Service applying and enforcing Section 415 limitations, this provision does not prevent an ERISA plan from setting a more stringent limit on benefits by aggregating benefits obtained from multiemployer plans.  Indeed, "the Internal Revenue Service approved Amendment 12, which suggests that the [Trustees'] application of the single employer aggregation rule to a multiemployer plan does not violate the [Internal Revenue] Code."  (14 Civ. 9348 (Mar. 31, 2016 Order) (Dkt. No. 46) at 13)

Plaintiff also argues that this Court's March 31, 2016 Order requires that his interpretation of Section 9.12(m) be adopted.  As discussed above, in its March 31, 2016 Order, this Court noted that

> aggregation "in accordance with Section 415(f)" would appear to require – as to Plaintiff – no aggregation of benefits at all.  To interpret Section 9.12(m) in a way that maintains the aggregation rule when the Plan became a multiemployer plan does not account for Section 9.12(m)'s reference to Section 415(f). . . . The Trustees' interpretation must be a reasonable reading of the text of Section 9.12(m), and must account for that section's reference to Section 415(f).

(14 Civ. 9348 (Mar. 31, 2016 Order) (Dkt. No. 46) at 14 n.8)

The Trustees have now offered an interpretation of Section 9.12(m) that "account[s] for that section's reference to Section 415(f)."  (Id.)  As discussed above, the Trustees have provided context to Section 9.12(m)'s reference to Section 415(f):  at the time that Section 9.12(m) was adopted as part of the 1999 Plan, Section 415(f) did not contain an exemption from the aggregation requirement for multiemployer plans.  Accordingly, the clear intent of the plan administrator was to require aggregation.

16

The Court concludes that the Trustees' determination that Section 9.12(m) of the Plan has always required aggregation – notwithstanding the 2008 conversion to multiemployer plan status – constitutes a reasonable interpretation of Plan language.

B.   **Amendment 12 Did Not Reduce an Accrued Benefit**

Plaintiff contends that he "obtained a protected right to have his pension benefits calculated in a certain way – namely, without aggregation and the accompanying limitations of Section 415" – when the Plan converted to multiemployer status in 2008.  (Pltf. Br. (Dkt. No. 52-1) at 13)  According to Plaintiff, "[t]he right to have one's benefits calculated in a certain way is a right subject to protection under Section 204(g) of ERISA[, the statute's anti-cutback provision]."  (Id. (citing Clark v. Feder, Semo & Bard, P.C., 808 F. Supp. 2d 219, 228 (D.D.C. 2011), aff'd, 739 F.3d 28 (D.C. Cir. 2014)))

Defendants argue that Amendment 12 did not reduce Plaintiff's accrued benefits. (Def. Br. (Dkt. No. 61) at 19)

Section 204(g) of ERISA provides that

> [t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . . [A] plan amendment which has the effect of [] (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C. § 1054.

As an initial matter – and for the reasons discussed above – when Plaintiff retired in 1999, the Plan clearly required aggregation of benefits.  Accrued benefits are generally determined under the terms of the benefit plan in effect at the time the participant separates from covered employment:  "Congress did not consider a post-retirement increase in pension benefits to be an 'accrued benefit.'"  Thornton v. Graphic Commc'ns Conference of Int'l Bhd. of

Teamsters Supplemental Ret. & Disability Fund, 566 F.3d 597, 606 (6th Cir. 2009) (citing Bd. of Trustees of Sheet Metal Workers' Natl. Pension Fund v. Comm'r, 318 F.3d 599, 604 (4th Cir. 2003) ("a [cost-of-living adjustment] benefit . . . could not have been an 'accrued benefit' because it did not accumulate during their service so as to become part of their legitimate expectations at retirement under the terms of the Plan then in effect")).  Although Plaintiff argues that the Plan unintentionally increased his benefits post-retirement by seeking and obtaining multiemployer plan status – making aggregation no longer required under the Internal Revenue Code – these circumstances provide no basis for invoking Section 204(g).

Plaintiff's attempt to distinguish the cases addressing post-retirement increases in benefits – such as cost-of-living adjustments – is not persuasive.  Plaintiff argues that a cost-of-living adjustment is "an accrued benefit even though[] the calculation of the benefit to be paid is dependent on future facts."  (Pltf. Reply. Br. (Dkt. No. 59) at 13)  According to Plaintiff, "just as a [cost-of-living adjustment] provision in a plan is nothing more than an existing formula at the time of retirement for calculating the dollar amount of monthly benefits at a future time, so too is the incorporation of Section 415(f) into the Plan nothing more than the incorporation at the time of retirement of a formula for calculating the dollar amount of monthly benefits at a future time."  (Id. at 14)  In short, Plaintiff contends that in 1999 he accrued the benefit of having Section 415(f) dictate whether aggregation would apply, regardless of what changes were later made to Section 415(f) or to the Plan itself.

This argument is not persuasive, because it does not acknowledge that in 1999 Section 415(f) and thus Section 9.12(m) required aggregation.  Plaintiff's argument also ignores the fact that Section 204(g) addresses benefits that are "part of [the participant's] legitimate expectations at retirement."  Thornton, 566 F.3d at 606.  Here, at the time of Plaintiff's

retirement in 1999, he could not have legitimately expected the benefit he now seeks, because (1) the alleged benefit is contingent on a future and unpredictable change in the law, and (2) the Plan does not make benefits contingent on future changes in Section 415(f).

For this reason, none of the cost-of-living adjustment cases cited by Plaintiff (see Pltf. Br. (Dkt. No. 52-1) at 14-15) are on point.  The benefit plans at issue in those cases all contemplated a cost-of-living adjustment, reflecting a mutual understanding between the plan administrator and plan participants that the actual cost of living would inevitably increase over time.  Cost-of-living adjustment formulas explicitly provide for future unknown events, such as changes in the cost of goods and services.  Accordingly, they are the type of benefit in which participants may accrue a legitimate expectation.[10]

Bellas v. CBS, Inc., 221 F.3d 517 (3d Cir. 2000) – cited by Plaintiff (Pltf. Reply. Br. (Dkt. No. 59) at 13) – is not on point for the same reason.  In Bellas, the court found that

---

[10]  The other cases cited by Plaintiff (see Pltf. Br. (Dkt. No. 52-1) at 13-14) are likewise inapposite.  In Allen v. Honeywell Ret. Earnings Plan, 382 F. Supp. 2d 1139 (D. Ariz. 2005), the court noted that "[a]ll features of a benefit formula – including the interest rate used to calculate an offset, a clause providing for a fractional reduction in the offset for certain participants, or the absence of an offset for Social Security income – must be considered when determining the accrued benefit under the pre-amendment plan."  Id. at 1153.  However, the changes at issue in Allen – an increased interest rate and certain offsets – were the effect of a merger of two plans; they were not the product of a statutory change.  Id. at 1149.  In Kiefer v. Ceridian Corp., 976 F. Supp. 829 (D. Minn. 1997), the plan modified the interest rate used to calculate a lump-sum benefit despite a plan provision providing for a different interest rate.  Id. at 848.  In In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan, 865 F. Supp. 2d 469 (S.D.N.Y. 2012), aff'd sub nom. Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan, 751 F.3d 71 (2d Cir. 2014), the plan adopted an "amendment [that] eliminated the ability for participants who were no longer in covered employment to age into the relevant plan."  Id. at 471.  The plan had specifically provided for the "age into" benefit, without referencing the Internal Revenue Code or any other statute.  Id.  Similarly, in Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan, 750 F.2d 1458 (9th Cir. 1985), the plan "contained a 'living pension' feature that tied the amount of payments to pensioners to the current salary of the job from which the pensioner retired."  Again, this benefit was provided without any reference to the Internal Revenue Code or another statute.  Id. at 1459-60.

"unpredictable contingent event benefits that provide a benefit greater than the actuarially reduced normal retirement benefit are retirement-type subsidies, and therefore are accrued benefits under section 204(g), if the benefit continues beyond normal retirement age." Bellas, 221 F.3d at 532.  In that case, however, the benefits at issue provided for "immediate payment of pension benefits in the event of a plant shutdown." Id. at 526.  Accordingly, while the benefit was contingent on a future event, it was apparent from the plan language that the parties explicitly chose to address this known risk.

Here, by contrast, there is no evidence that the plan administrator ever contemplated a change in Section 415.  The Plan makes no provision for changes in Section 415(f).  Instead, the 1999 Plan simply references Section 415(f)'s methodology, as it was required to do in order to comply with the Internal Revenue Code as it existed at that time.

Moreover, in 1999, Plaintiff could have had no legitimate expectation that Section 415(f) would later be amended to provide an exception from the aggregation requirement for multi-employer plans, or that he could benefit from any future amendment to Section 415(f). Unlike the plant shutdown risk addressed in the benefit plan at issue in Bellas, the possibility of an amendment to Section 415(f) is not addressed in the 1999 Plan, and nothing in the Plan provides a basis for Plaintiff to have had a legitimate expectation either that Section 415(f) would be amended or that he could benefit from a future amendment to Section 415(f).

The Court concludes that Plaintiff never accrued the benefit of non-aggregation. Accordingly, Defendants' July 28, 2016 Decision does not violate ERISA's anti-cutback provision.

## **<u>CONCLUSION</u>**

For the reasons stated above, Defendants' motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.  The Clerk of Court is directed to terminate the motions (Dkt. Nos. 52, 55) and to close this case.

Dated: New York, New York
       September 16, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge